I please the Court. I'm Your Honor, James Kuhn, appearing on behalf of the plaintiff. In this Social Security case, we assign one error only, and that is the administrative law judge's treatment of the lay testimony of the plaintiff's wife. It is quite clear, the parties do not dispute, that the ALJ is required to give reasons germane to each witness, specific reasons, if lay testimony is to be rejected. We don't believe the ALJ did that. The ALJ gave three or perhaps two and a half reasons here. And we're not asserting that these reasons do not suffice sort of accumulatively. None of them is a legitimate reason. None of them complies with the rules this Court has set out and with the Commissioner's own rules about how lay witness testimony is to be treated. Lay witness testimony, according to the Commissioner's own rules, is to be used by the ALJ to show the severity of an impairment and how it affects ability to work, how it affects ability to work. This Court has held similarly in several cases. The ALJ in this case rejected the testimony of the claimant's wife because she's not a medical or vocational expert. Of course not. That's the definition of a lay witness, and is therefore unable to render an opinion on how claimant's impairments impact his overall ability to perform basic work activities. If you hold that up next to the regulation that the Commissioner himself enacted, that lay witnesses are relevant to the severity of impairments and how it affects your ability to work, that reason directly contradicts the Commissioner's own regulations. So it cannot be a reason that supports the rejection of the claimant's wife's testimony. Second reason given by the ALJ was that the testimony and statements of the claimant's wife are, quote, not supported by the objective medical evidence. This Court has repeatedly held that to say that testimony doesn't line up with the medical evidence in general is not the kind of specific reason that will support rejection of any testimony, in addition to which we're talking here about depression. So that to insist on objective medical evidence of the degree of limitation simply doesn't wash medically. Well, look, the wife says he doesn't get off the couch. Says he doesn't leave the room for an entire day and he doesn't eat for an entire day. True. Doesn't eat and he doesn't leave the room. Okay. And there is, is there medical evidence suggesting that there are no physical symptoms in the medical evidence that he may be malingering? I'm sorry. I don't understand. Malingering. I understand malingering, but the Is there medical evidence with respect to malingering? There is medical evidence concerning his use of a cane, for example, where one doctor suggested that he thought the use of a cane didn't look real. That's right. And understand, if the ALJ had said, well, yeah, but she's observing this, but I think that the claimant's staying in his room for reasons calculated to cause people to think, including his wife, to think that he's disabled, well, that would be a different kind of reasoning. But the ALJ's decision has to be evaluated on its own terms. And the ALJ didn't say, I don't believe the wife because what she's observing here is conduct that's calculated to mislead. He said she's not, she is unable to render, I mean, it's a correct statement that she is unable to render opinions on how his impairments impact his overall ability to perform work activities. Now, you can say, you could put different spins on that, but if he had said, or she, or whoever, had said that this is, the fact that he's lying there all day and doesn't leave the room is really, doesn't go to the issue of his underlying impairments, that would be a correct statement, wouldn't it? I don't, well, I think not. I mean, the question would be, does he have to stay in the room? Is he capable of leaving the room or not? What was her testimony with respect to that? Her testimony was, he stays in the room all day. It was about his conduct. Absolutely, that's right, and the question is then, okay, is that an accurate reflection of his abilities or not? And one can look at the rest of the record and draw conclusions, but that is relevant evidence. If someone stays in a single room for an entire day, that is at least some evidence that he's not capable, especially when he's diagnosed with depression, and that's his main disability, that he's unable to leave. Well, but I guess I've just not, the ALJ said that I find her testimony to be generally credible as to the extent she is simply reporting her observations of the behaviors the claimant demonstrates. Right. That's it. There's nothing wrong with that.  It's the next part where he says, yeah, but, and I, inferentially, I disbelieve the rest of it, or I don't find it relevant that when she says that he's staying in the room because she's not a medic, she's not an expert, so she can't testify as to his work, his ability to work. That's what he's saying. The regulation says that's what lay witnesses do. Their testimony is relevant to your ability to work, to perform work activities. The ALJ is saying just the opposite. That's why I don't, I don't, I'm not going to use this evidence because a lay witness can't testify about somebody's ability to work. That's what he's saying, because they're not an expert. The regular, and you could have a rule that said that, but that's not what the rule says. The commissioner's own rule says you, the, you know, lay witness is, lay witness testimony is relevant, quote, to show the severity of your impairments and how it affects your ability to work. The logic of that is lay witness will observe, and then other evidence we will use to decide whether those observations are truly of the best conduct that the claimant can manage, or whether the claimant is trying to deceive someone. The inference usually with someone who lives with a claimant is, you know, most people just don't have it in them to put up this front for months and months and months and months on end, to stay in a single room and not eat for an entire day on a, on a repeated basis, twice a week. That's what she said. He doesn't find that not credible. He just says, well, I don't believe that that has anything to do with her, with whether the claimant is disabled. I'm sorry, sir. I didn't hear. There you go. Okay. You got to talk into that machine. Right. That's, that's why it's here. I'll try and do better on that. The logic of the ALJ, which is, I believe that she sees him not leaving the room for a whole day and not eating anything twice a week. I believe that, or I don't disbelieve it. But it's not relevant or meaningful. Well, what the district court said was the ALJ found the lay witness's testimony was not probative. Right. And my question is, is that inaccurate? It seems to me that that, that. That's, that's the interest. That is, that is, what the ALJ said is susceptible of that interpretation. I think it is susceptible of that interpretation, indeed. And you can go back to the Vincent case in 1984 and say, yeah, lay witness testimony can be rejected or doesn't have to be even considered if it's not probative. And we quite directly say Vincent is no longer good law because now you have to, even under the Commissioner's own rules, you have to evaluate lay testimony. You can't just say it's not probative. I mean, not probative, that just means not relevant. Well, this, the district court said that it simply summarized the testimony the ALJ had already heard from the plaintiff. Okay. Which is, which I think is also. It's cumulative, I guess, then. Yeah. Is that right? Well, that's different than not probative. Right. That's the second sentence. Okay. The ALJ, you know, didn't say that here in evaluating the testimony of the lay witness. I don't, I don't think that's an accurate reflection of the ALJ's own decision. But again, the fact that it's cumulative of the, of that testimony doesn't make it irrelevant, doesn't make it not probative, doesn't make it useless. It's, it's a different witness testifying about something. Okay. And you have to look at that evidence according to these rules, the ALJ, the Commissioner's own rules. You just have to adjust your time. We'll give you a minute. I have. But the heart of your argument is that the ALJ's conclusion that Cindy is a lay witness is not competent to render opinions on how Bruce's impairments impact, impact his overall abilities to perform basic work activities contradicts the Commissioner's current regulations. Absolutely. And our decisions. And, and these decisions. That's exactly right. So that's the, that's the heart of your argument. It is. All right. Thank you. We'll give you 30 seconds on rebuttal if you want to say something. Good morning. May it please the Court. Jamala Edwards representing the Commissioner. Well, the ALJ does need to provide germane reasons to reject the lay witness testimony. It should be considered. It's competent evidence. And as the plaintiff's counsel has mentioned, it does say in the regulations that it must be considered. But the ALJ did consider it. He discussed it. And as the Court has pointed out, he found it generally credible to the extent that she was reporting her observations, but not for the purpose of determining disability. Determining disability is a right that's reserved to the Commissioner. And no matter what any medical evidence the lay witness says, the ultimate decision resides with the Commissioner. So here, yes, you know, the first, the reason given to reject Ms. Bruce, that she's not knowledgeable in the medical or vocational field, right, a lay witness is not going to have that. But, again, that does not go to the determination of disability. Is that a proper basis to reject? I mean, to say that that testimony isn't relevant to the final decision, which it seems to me is what he's saying, that because she's not an expert, I don't really need to consider this testimony. I don't know. I would actually say that it's more the interpretation of Judge Schroeder, where it was for the purpose of determination of disability. She can't give a technical limitations, the type of limitations that a vocational or medical expert could give. Well, here's what's troubling me. If you accept her testimony, that he was just lying around day after day, not getting off the couch, not moving, unable to leave the room, can you say there's no real explanation of whether the ALJ thinks that that is not credible or whether he thinks that that is because there is medical evidence to show that even if that's true, that it was because he was deliberately malingering and just not getting out of bed for days and days and days and days and just lying around? Because it is unusual behavior if somebody is really just faking it to that extent. Most people who fake it are really out there playing golf or something. Sneaking around. In this case, the ALJ has talked about the objective evidence, and this court's case law has talked about how the objective evidence But you have to do more than just say, yes, she testified. You have to explain what you do with it. With how the objective evidence? With the lay testimony. I can't figure out what he did with it, whether he said it's not credible or whether he said that accepting it, there are medical reasons. A reasonable inference taken from this decision is that he found it generally credible to the extent that she's simply reporting her observations, but not credible for my ultimate decision regarding whether this claimant is disabled or not. What did she say about the disability? I'm sorry? You just said he found it not credible as far as whether he's disabled or not. What did she say? She said he lays around all day on the couch. Lying around all day. Right. He has depression. He's unable to lift certain things and do certain things. During her hearing testimony, she actually testified quite a bit to different that the claimant had. But this particular claimant had a closed period of disability, and then at the end of that closed period of disability did not seek any medical treatment for a period of two years. And then after that two years went to just a minimal number of treatments. And in those treatments, well, I shouldn't call them treatment evaluations. One was where that was mentioned earlier, the exaggerated walk, gait instability with the cane, questionable back diagnosis, whether he even needed the cane. And then the other was the psychological evaluation, which showed exaggeration on the testing. And the ultimate conclusion of that psychologist was that he had a guarded to good ability to return to work and had only mild limitations. Are you saying that the judge simply found that he didn't lie around two days a week and didn't leave the room and didn't eat? If that were true, he certainly wasn't capable of performing any job in the economy, was he? Well, the ALJ said that the lay witness was credible to the extent that she observed the claimant actually doing that. From the medical record and what we have in the record before the ALJ, it does not seem that the claimant was that he had to do that. He was not medically disabled. It was his choice, rather, to lie around and to do that. Well, there's no support in the record. The psychological evaluation only showed mild limitations. It was an evaluation that had an interview, that had testing. He hasn't been treating during this time period either. On what evidence should the ALJ base this decision? Rather than the medical evidence, the absence of any treatment, what can the ALJ do? Believe the wife who, what she also mentions, possibly might have a vested interest in him getting disability. I mean, she's also, although as a secondary reason to the objective evidence, lack of objective evidence, she has also applied for disability benefits. Neither of them are working. They're living with friends who, in the record, he said, oh, the friends aren't too happy about us living here. You know, they're homeless. And, you know, it would only, she would only stand to gain financially by him being awarded disability. And, you know, this court has found that ordinary methods of credibility, ordinary methods of considering credibility is within the ALJ's right to do that. Yes, but you can't reject credibility simply on the grounds that it's not supported by the medical records. That's the problem. Mm-hmm. Well, Greger said that statements that are inconsistent with the presentation of treating physicians are, is a germane reason to reject lay witness testimony. Right? And so in this situation, she is testifying that he has all these limitations that aren't supported by the objective medical evidence. And also, Greger also says the close relationship, you know, that can go also as well to her, you know, benefiting potentially from the financials. What did the ALJ say about depression? Well, the depression in the ALJ's RFC is actually quite thorough. And he gave, you know, slight limitations. And the psychologist filled out an MRFC, the Mental Residual Functional Capacity form, where he said that he would have moderate limitations in, I think it is, dealing with supervisors and with interacting with the public. So the ALJ accommodated those particular limitations within his RFC. What medications was he taking? I think that I saw that he was taking Efexor, which is an antidepressant. I'm not quite sure, but I think he was taking that. So, you know, here, you know, magic words aren't necessary for the ALJ to say, I reject because of this. He has said, you know, it's generally credible except for those purposes. You know, reasonable inference from this record is the ALJ rejected testimony of the lay witness based on lack of objective evidence, potential secondary gain issues, and that it was reserved to him, the ultimate decision on disability. Okay. Thank you. Thank you, Your Honor. A couple of things. To answer the question, what exactly did she say? Excerpt of record, page 72. He won't get out. He doesn't leave the room, and that's all day. He doesn't eat. A lot of times he won't bathe. I can tell he's having, by those body movements and the look on his face, I know that he's down and not willing to deal with anything or anybody, how often, two or maybe more times a week. That's ER 72. So that's what she said. She doesn't say he's disabled. She says she gives those observations. She's not usurping the function of the ALJ here. So that conclusion is really how you plug that into what the vocational expert says, which, of course, is if you miss more than two days a month, you can't work. The ALJ did not consider her testimony because it's lay testimony. That's what he said. It's not about magic words. It's about what he actually said. She's not an expert, so she can't say. That's not how this kind of evidence is supposed to be evaluated, commissioner's own rules, this Court's decisions. Finally, the fact that she has a disability claim, you might say she's his wife. Should she benefit? That's not what the ALJ said. He said she has a disability claim. Plain irrelevant. It doesn't make any sense. Thank you. Thank you, counsel. The case just argued is submitted for decision. The next case, McFarland v. Astru, is submitted on the briefs. It's so ordered. The same with Nicholson-Worm v. Astru, submitted on the briefs. We'll hear the next case for argument, which is Leidy v. Astru.
judges: Schroeder, Pregerson, Strom